OPINION
{¶ 1} Anthony Cockroft, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which he was found guilty of aggravated robbery, in violation of R.C. 2911.01, which is a first-degree felony; aggravated murder with specification, in violation of R.C. 2903.01; attempted murder, in violation of R.C. 2903.02, which is a first-degree felony; and tampering with evidence, in violation of R.C.2921.12, which is a third-degree felony.
 {¶ 2} On September 26, 2003, appellant, Mario Barfield, Brandon Washington, and Shawn Atchley planned a robbery. They decided to target several Mexican people, including brothers Jorge and Armando Javier, who lived in a nearby apartment building, believing that they would have just been paid and did not use bank accounts. The four men went to the brothers' nearby apartment and approached Jorge as he was walking outside. Washington and Jorge engaged in a physical confrontation. Appellant checked Jorge's pockets during the confrontation but found no money. During this time, Armando came out of the apartment and saw Jorge fighting with two men, whom he recognized from the area. Armando said he saw appellant get a gun from another man in the group. The gun cartridge fell out, appellant replaced it, cocked the gun, then shot Jorge and Armando. Washington said that appellant then gave the gun to Atchley before the men fled. Jorge died and Armando was seriously injured from their gunshot wounds.
 {¶ 3} Washington and appellant fled to Washington's nearby apartment. Because it had been raining, police were able to follow footprints leading to the apartment. When confronted by police, Washington told them that appellant had fired the gun, after which they were both arrested. Barfield and Atchley were also arrested. The gun was found inside a refrigerator drawer in Atchley's apartment.
 {¶ 4} Appellant was indicted on aggravated robbery, aggravated murder with specifications, attempted murder, and tampering with evidence. The aggravated murder charge contained two death penalty specifications. A jury trial was commenced, at which the state called eight witnesses, the defense called two witnesses, and the state called two rebuttal witnesses. The jury found appellant guilty of all counts as charged in the indictment. At the mitigation phase of the trial, the jury recommended a sentence of 25 years to life. The court proceeded immediately to sentencing, and imposed a sentence of 25 years to life with an additional consecutive three years for the gun specification on the aggravated murder charge, ten years for the aggravated robbery charge, nine years for the attempted murder charge, and five years for the tampering with evidence charge, with the aggravated robbery and tampering with evidence terms to be served consecutively with the aggravated murder term, and the attempted murder term to be served consecutively with the aggravated murder term and the gun specification term. Appellant appeals the judgment of the trial court, asserting the following four assignments of error:
[I.] In a capital case, where the trial judge gives a faulty reasonable doubt instruction during the penalty phase, appellant's sentence violates the due process clause of the fourteenth amendment to the United States Constitution, and article one, Section sixteen of the Ohio Constitution, and the proscription against cruel and unusual punishment contained in the eigth [sic] amendment to the United States Constitution, and article one, Section nine of the Ohio Constitution.
[II.] The trial court erred when it entered judgment against the defendant as to count four, tampering with evidence, when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
[III.] The admission of hearsay statements as to key issues deprived appellant of his right to a fair trial under the Ohio and Federal Constitutions.
[IV.] The trial court erred when it sentenced appellant to non-minimum, maximum, consecutive sentences based on facts not found by the jury or admitted by appellant.
 {¶ 5} Appellant argues in his first assignment of error that the trial court erred in giving the same reasonable doubt instruction during the penalty phase as it did during the trial phase. The reasonable doubt instruction given during both the trial and penalty phase was as follows:
Reasonable doubt is present when after you've carefully considered and compared all of the evidence, you cannot say you are firmly convinced of the truth of the charge. * * *
Appellant contends that, during the penalty phase, the court should have instructed the jury that reasonable doubt is present when you cannot say you are firmly convinced that the aggravating circumstances outweigh the mitigating factors. Appellant maintains that the use of the "truth of the charge" language was problematic because it failed to give the proper guidance in conducting a constitutionally appropriate weighing process of the aggravating circumstances versus the mitigating factors. We disagree.
 {¶ 6} In State v. Jones (2000), 90 Ohio St.3d 403, 418, the Ohio Supreme Court rejected the same argument regarding a "truth of the charge" instruction used during the penalty phase of the trial:
In his twenty-fourth proposition of law, appellant argues that the court erred in using the statutory definition of reasonable doubt during penalty-phase instructions. Admittedly, the trial court's reference to the "truth of the charge" is not the preferred language for a penalty-phase reasonable-doubt instruction. [State v.] Moore [1998], 81 Ohio St.3d [22] at 37, 689 N.E.2d at 15. However, any such error is harmless where the trial court clearly instructs the jury that, before recommending death, it must be convinced beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors, and that the prosecution has the burden of proof on the issue. State v. Taylor (1997),78 Ohio St.3d 15, 29-30, 676 N.E.2d 82, 96. Since the trial court clearly instructed the jury in this manner, appellant's twenty-fourth proposition is not well taken.
See, also, State v. Goff (1998), 82 Ohio St.3d 123, 132 (there is no prejudicial error in giving "truth of the charge" instruction during penalty phase when, after considering all of the penalty-phase instructions together, the instructions convey to jurors that they must be firmly convinced that the aggravating circumstances outweigh the mitigating factors).
 {¶ 7} Thus, according to Jones, the error is harmless if the court instructs the jury that it must be convinced beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors, and the prosecution has the burden of proof on the issue. In the present case, the trial court complied with such requirements and gave the following instructions during the penalty phase:
Your decision between death and one of the alternative life sentences will depend on whether each of you finds beyond a reasonable doubt that the aggravated circumstances outweigh the mitigating factors.
* * *
* * * The burden is solely on the State of Ohio to prove that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. * * *
Therefore, pursuant to Jones, we find the trial court's use of the "truth of the charge" language in its instruction during the penalty phase was harmless error. Appellant's first assignment of error is overruled.
 {¶ 8} Appellant argues in his second assignment of error that there was insufficient evidence to support the jury's finding of guilty with regard to the tampering with the evidence charge, and such finding was against the manifest weight of the evidence. When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781.
 {¶ 9} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v.Getsy (1998), 84 Ohio St.3d 180, 193-194; State v. Eley (1978),56 Ohio St.2d 169, syllabus. In conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 10} R.C. 2921.12, tampering with evidence, provides, in pertinent part:
(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]
 {¶ 11} Appellant contends that it is unclear what happened to the weapon after the shots were fired, and it is only clear that it was later found in Atchley's refrigerator in his apartment. Thus, appellant contends, he could not be guilty of tampering with evidence. We disagree. Appellant fired the gun that killed Jorge and wounded Armando and participated in the robbery of Jorge. He then handed the gun to Atchley just before everyone fled the scene. After shooting two people with a gun during a robbery, appellant surely knew "that an official proceeding or investigation [was] about to be or likely to be instituted[.]" Further, by giving the gun to Atchley immediately after the shooting and knowing that Atchley would flee the scene, the jury could have found beyond a reasonable doubt that appellant was attempting to conceal or remove the gun with purpose to impair its availability as evidence in a legal proceeding or investigation. As this court stated in finding that a defendant tampered with evidence after hiding a getaway vehicle following a shooting: "After the shooting took place, appellant did not stop the SUV and exit it, nor did appellant drive the SUV to a police station. Appellant drove the SUV and parked it in an alley behind an apartment building." State v. Jones, Franklin App. No. 02AP-1390, 2003-Ohio-5994, at ¶ 35. Likewise, in the present case, appellant did not keep the gun and wait for the police to arrive, lay the gun down for the police to find, or deliver the gun to the police. Therefore, we find there was sufficient evidence to support the jury's verdict as to tampering with evidence, and the verdict was not against the manifest weight of the evidence. For these reasons, appellant's second assignment of error is overruled.
 {¶ 12} Appellant argues in his third assignment of error that the trial court erred in admitting hearsay statements. When defense witness Detective Zachary Scott was asked on direct examination why he told Washington that he would have to testify against appellant in order to get a deal or "get himself out of a jam" but not against anyone else, Detective Scott explained that the other defendants involved had all cooperated, and, thus, Washington's testimony was needed only against appellant. Appellant contends that the trial court then improperly permitted the state to ask Detective Scott on cross-examination further questions about what the other defendants said when they were arrested. Detective Scott testified on cross-examination that Atchley's version of the events matched that of Armando's, the other defendants, and the other witnesses, and that appellant was the gunman.
 {¶ 13} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Where an out-of-court statement is offered without reference to its truth, it is not hearsay. State v. Lewis (1970), 22 Ohio St.2d 125, 132-133. Consequently, "[s]tatements which are offered to explain a police officer's conduct while investigating a crime are * * * not hearsay," as the statements are not offered for their truth. State v. Price (1992),80 Ohio App.3d 108, 110, citing State v. Blevins (1987),36 Ohio App.3d 147, 149; Fairfield v. Tillett (Apr. 23, 1990), Butler App. No. CA89-05-073. Thus, extrajudicial statements by an out-of-court declarant are properly admissible to explain subsequent investigative or other activities of the witness to whom statement was directed. State v.Thomas (1980), 61 Ohio St.2d 223 (testimony of law enforcement officials that they had received information about illegal activity was admissible to explain the subsequent investigative activities of the witnesses).
 {¶ 14} In the present case, Detective Scott's statements about what Atchley told him were not offered for their truth but, rather, to explain the course of the investigation and why he told Washington that his testimony was only necessary against appellant. The court gave a cautionary instruction and a detailed explanation with an example during the detective's testimony, in which it explained to the jury the testimony was provided only to explain why the detective interrogated Washington the way he did. The jury is presumed to follow instructions given by the court. Pang v. Minch (1990), 53 Ohio St.3d 186. Further, the trial court carefully oversaw the examination of Detective Scott, instructing the state not to lead the witness and telling the witness to only speak in generalities about what Atchley told him. Therefore, we find the statement was not hearsay prohibited by Evid.R. 801(C), and the trial court did not abuse its discretion by permitting the testimony.
 {¶ 15} In addition, as the state points out, appellant cannot complain about the cross-examination when it appears as if he attempted to imply on direct examination that Washington was coerced or persuaded by Detective Scott into implicating appellant and not any of the other defendants. Appellant asserts that the detective's explanation during direct examination as to why he conducted his interview with Washington in the manner in which he did was all that was necessary to provide a sufficient explanation and contends the state's cross-examination was unnecessary. However, it is well-established that the defense "opens the door" to cross-examination on a subject by raising it on direct examination as part of the theory of defense. State v. Gowdy (2000),88 Ohio St.3d 387, 397. In the present case, appellant cannot open the door to the issue and then seek to close it right behind him. The state was permitted to cross-examine Detective Scott on the matters raised first by appellant on direct examination. For these reasons, appellant's third assignment of error is overruled.
 {¶ 16} Appellant argues in his fourth assignment of error that the trial court erred when it sentenced appellant to non-minimum, maximum, and consecutive sentences based on facts supporting aggravating circumstances not found by the jury or admitted by appellant, in contravention to Blakely v. Washington (2004), ___ U.S. ___, 124 S.Ct. 2531, in which the United States Supreme Court concluded that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 2536. However, this court has recently rejected appellant's precise argument in State v. Abdul-Mumin, Franklin App. No. 04AP-485, 2005-Ohio-522. We note, however, that there is a split among Ohio appellate districts as to whether the decision in Blakely renders Ohio's sentencing scheme unconstitutional, and the court in State v. Trubee,
Marion App. No. 9-03-65, 2005-Ohio-552, has certified its determination on the issue in the negative as being in conflict with the decision inState v. Bruce, Hamilton App. No. C-040421, 2005-Ohio-373. Notwithstanding, based upon our recent precedent in Abdul-Mumin,
appellant's fourth assignment of error is overruled.
 {¶ 17} Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Lazarus and Klatt, JJ., concur.